# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dwight Reisdorf and DevGroup, Inc.,     Civil No. 14-780 (DWF/HB)

    Plaintiffs and Counter-Defendants,

v.

i3, LLC, and Logistics International, LLC,

    Defendants and Counter-Claimants,

and                **MEMORANDUM**
               **OPINION AND ORDER**

Chad Ogle, individually and in his capacity
as CEO of i3, LLC, and President of Logistics
International, LLC,

    Defendant.

---

Michael Milo, Esq., Milo Law Firm PLLC & Neff Law Firm, P.A., counsel for Plaintiffs and Counter-Defendants Dwight Reisdorf and DevGroup, Inc.

John N. Bisanz, Jr., Esq., and Bruce C. Recher, Esq., Henson & Efron, P.A., counsel for Defendants and Counter-Claimants i3, LLC, and Logistics International, LLC.

Mark P. Hodkinson, Esq., Christopher J. Haugen, Esq., and Jonathan P. Norrie, Esq., Bassford Remele, P.A., counsel for Defendant Chad Ogle.

---

## INTRODUCTION

This matter is before the Court on the following motions: (1) Motion for

Summary Judgment brought by Defendant Chad Ogle ("Ogle") (Doc. No. 51);

(2) Motion for Summary Judgment brought by Defendants and Counter-Claimants

i3, LLC ("i3") and Logistics International, LLC ("LI") (Doc. No. 59); (3) Motion for

Partial Summary Judgment brought by i3 and LI (Doc. No. 62); and (4) Motion for

Partial Summary Judgment brought by Plaintiffs and Counter-Defendants

Dwight Reisdorf ("Reisdorf") and DevGroup, Inc. ("DevGroup") (Doc. No. 85).  For the

reasons set forth below, the Court grants Ogle's motion, grants in part and denies in part

i3 and LI's motion for summary judgment, denies i3 and LI's motion for partial summary

judgment, and grants in part and denies in part Reisdorf and DevGroup's motion for

partial summary judgment.

## BACKGROUND

Defendant LI is a Minnesota limited liability corporation that provides

transportation and logistics solutions services.  (Doc. No. 74 ("Bisanz Aff. II.") ¶ 2,

Ex. A ("Reisdorf Dep.") at 42; Doc. No. 19 ("Am. Compl.") ¶ 26.)  Defendant i3 is a

wholly-owned subsidiary of LI, and provides construction, integration, and installation

services for retail and office spaces.  (Doc. No. 71 ("Hasse Aff.") ¶ 1; Doc. No. 72

("Opdahl Aff.") ¶ 2; Reisdorf Dep. at 42.)  Tim and Glenn Hasse (together, the "Hasses")

are the sole owners of i3 and LI.  (Doc. No. 54 ("Haugen Aff.") ¶ 11, Ex. I ("Hasse

Dep.") at 33-34.)

Plaintiff Dwight Reisdorf ("Reisdorf") began working at i3 as an Executive Vice

President on November 24, 2010.  (Doc. No. 96 ("Reisdorf Aff.") ¶ 2; Reisdorf Dep.

at 9.)  Although Reisdorf received a first draft of an employment agreement in

November 2010, Reisdorf and i3 did not enter into an employment agreement at that

time.  (Bisanz Aff. II, Attach. 2 ("Draft Employment Agreement"); Doc. No. 70 ("Kocopi

Aff.") ¶ 6); Reisdorf Dep. at 23-24.)  Reisdorf asserts that Chad Ogle ("Ogle"), President

of LI and Chief Executive Officer of i3, promised Reisdorf an annual salary of $175,000. (Reisdorf Dep. at 34-36; Reisdorf Aff. ¶ 11.)  i3 and LI dispute this assertion.  (Kocopi Aff. ¶ 5.)

On February 2, 2011, Ogle sent an e-mail to the Hasses, with a copy to Reisdorf, in which he asked for permission to start a minority-owned business with Reisdorf.  (Doc. No. 98 ("Milo Decl.") ¶ 8, Ex. 8 ("February 2, 2011 E-Mail"); Reisdorf Dep. at 44-45.) In February 2011, Ogle and Tim Hasse discussed the possibility of Reisdorf and Ogle creating a minority-owned business.  (Hasse Aff. ¶ 4.)  During that conversation, Tim Hasse agreed that Ogle and Reisdorf could create such a business.  (*Id.*)

On February 16, 2011, Reisdorf and Ogle co-formed Plaintiff DevGroup, a Minnesota corporation.  (Reisdorf Aff. ¶ 3; Haugen Aff. ¶ 12, Ex. J ("Ogle Dep.") at 45; Milo Decl. ¶ 11, Ex. H ("Secretary of State Filing").)  At the time of DevGroup's formation, Reisdorf was the President, Treasurer, Director, and a majority shareholder of DevGroup, and Ogle was the Vice President and Secretary of DevGroup.  (Reisdorf Dep. at 71; Ogle Dep. at 45, 71.)  Reisdorf asserts that he believed the formation and dealings of DevGroup were conducted with the knowledge and consent of i3 and LI's owners. (Reisdorf Aff. ¶¶ 8, 72.)

On March 30, 2011, Reisdorf signed an Employment Agreement with i3.  (Haugen Aff. ¶ 4, Ex. B ("Employment Agreement"); Bisanz Aff. II, Attach. 6 ("Employment Agreement"); Milo Decl. ¶ 7, Ex. D ("Employment Agreement").)  The Employment Agreement provides, in relevant part, as follows:

1.    <u>Employment</u>.  Effective as of the date hereof Employee shall assume the position of Executive Vice President of i3.  In this capacity, Employee shall perform such duties and responsibilities as are assigned to him, any of which duties and responsibilities may be modified from time to time by the members of the Board of Governors of i3.  By accepting this employment, Employee Agrees to devote his full time, attention and energy to the business of i3 and to not pursue any other employment, business or business related activity without the prior written consent of i3.
. . .

2.    <u>Compensation</u>[.]

(a)    <u>Salary</u>.  Employee shall be paid at a base annual salary rate of $125,000.  Said initial base salary shall increase by up to three percent (3%) per year, with any said increase being effective on the one year anniversary of the date of this Agreement.

(b)    <u>Bonus</u>.  Once the Minimum Net Income (as defined below) is earned, Employee shall be entitled to the bonus set forth in this Section 2(b) (the "Bonus").  i3 shall pay Employee a Bonus equal to ten percent (10%) of quarterly profits earned by i3 during such quarter (calculated in accordance with i3's accounting policies) (the "Bonus Amount") for each calendar quarter Employee is eligible to receive the Bonus.  Payment of the Bonus Amount for any calendar quarter shall be made only if (a) the Minimum Net Income was earned in a prior calendar quarter, (b) i3 is profitable (calculated in accordance with i3's accounting policies) during such calendar quarter and (c) any contributions made by the Members of i3 to fund the start-up or operations of i3 have been repaid to such Members in full.  Such quarterly bonuses shall be made within 30 days after the end of the calendar quarter in which the Bonus Amount was earned.  "Measured Net Income" shall mean cumulative net income i3 (as determined in i3's sole discretion in accordance with i3's financial accounting policies and after taking into account any losses from prior periods) of nine hundred thousand dollars ($900,000) measured from the date of i3's formation.
. . .

4.    <u>Term and Termination of Agreement</u>.
. . .

(a)    This Agreement shall be immediately terminable by i3 for cause.  For purposes of this Agreement, "Cause" shall be defined as follows:

(i)    a material breach of any provision of any legal obligation or representation made to i3;

(ii)    any act of dishonesty, misappropriation, embezzlement, fraud or similar conduct, or any

4

conflict of interest or self-dealing, involving i3 or any of its affiliates;

. . .

(v) any intentional act or omission which materially harms i3's business or reputation or subjects i3 and/or its officers, directors, agents or employees to civil or criminal liability;

. . .

8. <u>Noncompetition and Nonsolicitation</u>. In consideration of the compensation and other benefits provided to Employee as detailed in this Agreement, for a period of two (2) years after employment with i3 ends, regardless of the reason, Employee shall not, directly or indirectly, on his own behalf or at the request of any other person, employer or entity, solicit, offer to provide or provide any services to a competitor of i3.

. . .

16. <u>Amendment</u>. This Agreement contains the entire agreement of the parties and may be altered or amended only by an agreement in writing signed by both parties.

(Employment Agreement ¶¶ 1, 2, 4, 8, 16.)

On March 30, 2011, Reisdorf and Chris Kocopi ("Kocopi"), the President of i3, signed a Phantom Membership Interest Agreement with i3. (Bisanz Aff. II, Attach. 7 ("Phantom Membership Interest Agreement"); Kocopi Aff. ¶ 7.) The Phantom Membership Interest Agreement provided for the grant of a twenty percent phantom interest stock ownership in i3 if certain conditions were satisfied, which would be paid on a change of control, but which would be lost upon termination of employment. (Phantom Membership Interest Agreement ¶¶ 2-4.) The Phantom Membership Interest Agreement also included a "Covenant Not To Compete" provision, which provided that:

Participant covenants and agrees that for a period ending two (2) years after the Participant's termination of employment, he shall not, directly or indirectly, as owner, partner, joint venturer, stockholder, broker, agent, shareholder, trustee, licensor, or in any other capacity whatsoever (as applicable) (i) engage in, become financially interested in, be employed by, render any consultation or business advice to, or have any connection with,

any person, firm, corporation, business, or other enterprise engaged in a similar business to, or which is engaged in direct competition with, the business of the Company, or its affiliates, in any market in which the Company, or its affiliates, are then conducting business or (ii) knowingly interfere with, disrupt or attempt to disrupt any then existing relationship, contractual or otherwise, of the Company, or its affiliates, with any of its customers, suppliers, employees, agents or other persons with whom the Company deals, provided, however, that the for[e]going covenant shall not apply if the Participant's employment with the Company is terminated by the Company without Cause.

(*Id.* ¶ 6.A.)

In May 2011, DevGroup became certified as a minority-owned business enterprise ("MBE") by the Midwest Minority Supplier Development Council ("MMSDC"). (Doc. No. 56 ("Bisanz Aff. I") ¶ 2, Ex. 1 ("MMSDC Certification"); Reisdorf Dep. at 53; Reisdorf Aff. ¶ 57.) Reisdorf asserts that i3 and LI knew that in order to maintain DevGroup's MBE status, Reisdorf had to have actual control and majority ownership of DevGroup, based on Reisdorf's Asian/Pacific Islander descent, and that DevGroup had to make a profit. (Reisdorf Aff. ¶¶ 16, 72.)

On October 1, 2011, DevGroup entered into a Master Services Agreement with John Ryan Performance, Inc. ("John Ryan") and a Subcontractor Agreement with John Ryan and i3. (Reisdorf Dep. at 54; Milo. Decl. ¶ 13, Ex. J ("Master Professional Services Agreement"); Milo. Decl. ¶ 14, Ex. K ("Subcontractor Agreement").) Under the Master Services Agreement and Subcontractor Agreement, DevGroup was the service provider, i3 was the subcontractor providing construction, installation, and implementation services to John Ryan clients, and LI was the subcontractor providing logistics support. (Reisdorf Dep. at 55-56; Master Professional Services Agreement;

Subcontractor Agreement.)  Pursuant to the Master Services Agreement, DevGroup was to bill John Ryan for all services, including those provided by i3 and LI, and DevGroup, in turn, was to pay i3 and LI for all services invoiced and rendered by each entity. (Reisdorf Dep. at 58.)

Reisdorf asserts that in October 2012, he was appointed an Executive Vice President of LI.  (Reisdorf Aff. ¶ 2.)  Reisdorf further asserts that as Executive Vice President, he was treated differently than Ogle, who is Caucasian, based on his ethnicity. (*Id.* ¶¶ 28-29.)

In early 2013, Ogle told Tim Hasse that DevGroup was not profitable.  (Hasse Aff. ¶ 6.)  Tim Hasse asserts that aside from this statement by Ogle, he was told nothing by either Ogle or Reisdorf about the details of DevGroup's transactions with i3 or LI, including if or how DevGroup made money or generated profits, or if or how Ogle and Reisdorf were compensated.  (*Id.* ¶ 7.)  Reisdorf asserts that he did not speak to the Hasses regarding the DevGroup's invoice amounts or pricing relating to its transactions with John Ryan.  (Reisdorf Dep. at 61.)

On March 25, 2013, Clifton Larson Allen, an accounting firm that provides accounting services to i3 and LI, sent a memorandum to the Hasses regarding i3's accounting, with the "biggest item" being DevGroup's business with i3, and recommending improvements regarding documentation on income and expenses generated by DevGroup.  (Hasse Aff. ¶ 9, Ex. 110 ("March 25, 2013 Letter"); Doc. No. 67 ("Fronk Aff.") ¶ 16.)

On April 1, 2013, i3 and LI began an investigation into DevGroup's business dealings.  (Fronk Aff. ¶ 20.)  Over the next few weeks, i3 and LI obtained DevGroup's accounting records and bank statements from Reisdorf, independently confirmed the amounts paid to DevGroup by John Ryan, and interviewed witnesses.  (*Id.*)

Reisdorf asserts that he spoke with Ogle in early April 2013 regarding Reisdorf's fears that he would be fired.  (Reisdorf Dep. at 85.)  Reisdorf asserts that during his conversation with Ogle, Ogle told Reisdorf that he would speak with Tim Hasse and that everything would "be okay," and instructed Reisdorf to "provide the documentation they are requesting."  (*Id*.)  Reisdorf also asserts that Ogle told Reisdorf to send an apology e-mail to Tim Hasse and that, if he sent the apology e-mail, he would keep his job.  (*Id.* at 87, 89.)  Reisdorf contends that he trusted Ogle and assumed that what Ogle told him was correct.  (*Id.* at 86.)

On April 10, 2013, Reisdorf sent Tim Hasse an apology e-mail.  (*Id.*; Haugen Aff. ¶ 7, Ex. E ("April 10, 2013 E-Mail").)  In the April 10, 2013 e-mail, Reisdorf states that:

> I am sorry.  I am sorry I never did the minority owned thing the right way or even did it at all. . . .  I can tell you there will be 100 percent honesty and openness and there has been with Tim so far.  I have never in my life been more disappointed in myself as I am today . . . .  I am just so disappointed in myself for tarnishing the large upcoming success we are having.  I don't expect either of you to forgive me.  I just am appreciative I have an opportunity to gain your trust and respect back.

(April 10, 2013 E-Mail.)  Reisdorf asserts that he "didn't know what [he] was apologizing for" in his e-mail to Tim Hasse.  (Reisdorf Dep. at 88.)

On April 19, 2013, Brian Park ("Park"), General Counsel of LI, sent an e-mail to Reisdorf requesting a meeting between the i3 Board of Governors and Reisdorf on

April 22, 2013, and asking Reisdorf to bring with him "all of the documents called for within the attached Direction Letter, along with the executed Assignment of Receivables Agreement."  (Opdahl Aff. ¶ 9, Ex. 102 ("April 19, 2013 E-Mail").)  The two attachments referenced in the April 19, 2013 e-mail included a formal letter request for information, which instructed Reisdorf to "turn over all financial and business records" of DevGroup and to execute the other e-mail attachment, an Assignment of Receivables Agreement, which would "assign[] the receivables owed by John Ryan[] to DevGroup over to i3 and [LI]."  (*See id.*; Haugen Aff. ¶ 10, Ex. H ("Direction Letter").)

Reisdorf asserts that he expressed concern to Ogle and to counsel for i3 and LI regarding the April 17, 2013 letter because Reisdorf believed that he would violate the MBE certification requirements if he were to transfer the receivables owed to DevGroup to i3 and LI.  (Reisdorf Aff. ¶ 89; Am. Compl. ¶¶ 79, 165.)  Reisdorf alleges that he also expressed concern to Ogle that he would lose his job if he did not comply with the requests outlined in the letter.  (Reisdorf Aff. ¶ 89.)  Reisdorf did not execute the Assignment of Receivables Agreement.  (*Id.*)  However, Reisdorf provided some of DevGroup's financial records to i3 and LI personnel.  (Reisdorf Dep. at 80.)

On April 22, 2013, during his meeting with the i3 Board of Governors, Reisdorf was terminated from his employment at i3 and LI.  (Opdahl Aff. ¶ 12.)  Reisdorf asserts that he was terminated because of his race and/or national origin.  (Reisdorf Aff. ¶ 28; Am. Compl. ¶¶ 2, 105, 130.)  i3 and LI assert that Reisdorf was terminated due to a conflict of interest, untruthfulness to the board of directors, and fiduciary issues based on compensation he received from DevGroup in the form of funds diverted from i3 and/or

9

LI to DevGroup.  (Hasse Dep. at 62.)  i3 and LI further assert that on April 22, 2013,

Reisdorf was informed that his employment was terminated "for cause," and that

Reisdorf responded "sure, that's understandable."  (Doc. No. 69 ("Park Aff.") ¶ 35.)

Reisdorf asserts that immediately following his termination, "people from i3 and

LI did everything they could to subvert DevGroup's relationship with John Ryan to the

point where John Ryan stopped doing business with DevGroup."  (Reisdorf Aff. ¶ 88.)

Following Reisdorf's termination, Kocopi overheard Ogle make a statement to the

effect that he was worried that Reisdorf, an ex-marine, might be hiding in the bushes.

(Kocopi Aff. ¶ 30.)  Kocopi did not regard the statement as offensive nor did it change or

influence his opinion of Reisdorf.  (*Id.*)

On March 19, 2014, Reisdorf and DevGroup commenced this lawsuit.  (*See* Doc.

No. 1 ("Compl.").)  Reisdorf and DevGroup subsequently filed an Amended Complaint,

in which they assert the following fifteen counts:  (I) Termination of Employment in

Violation of Title VII of the Civil Rights Act of 1964 against i3 and LI; (II) Termination

of Employment in Violation of Minn. Stat. § 363A.08, *et seq.,* against i3 and LI;

(III) Termination of Employment in Violation of Minn. Stat. § 181.932 against i3 and LI;

(IV) Breach of Contract against i3 and LI; (V) Promissory Estoppel against i3, LI, and

Ogle; (VI) Slander against i3, LI, and Ogle; (VII) Fraud against Ogle; (VIII) Violation of

Minn. Stat. § 181.13, *et seq.,* against i3 and LI; (IX) Intentional Infliction of Emotional

Distress against i3, LI, and Ogle; (X) Declaratory Judgment against i3 and LI;

(XI) Interference with Contract against i3 and LI; (XII) Loss of Business Opportunity

against i3 and LI; (XIII) Interference with Contract against Glenn Hasse and Tim Hasse;

(XIV) Negligence against Glenn Hasse and Tim Hasse; and (XV) Breach of Fiduciary Duty against Ogle.  (Doc. No. 19 ("Am. Compl.") ¶¶ 114-337.)

In response to the Amended Complaint, on May 1, 2014, i3 and LI filed the following eleven counterclaims:  (I) Fraud and Misrepresentation against Reisdorf; (II) Breach of Fiduciary Duty against Reisdorf; (III) Breach of the Duty of Loyalty against Reisdorf; (IV) Unjust Enrichment against Reisdorf and DevGroup; (V) Breach of Contract against DevGroup; (VI) Breach of Contract against DevGroup; (VII) Conversion against Reisdorf and DevGroup; (VIII) Interference with Contract against DevGroup; (IX) Violation of Minn. Stat. § 604.14 against Reisdorf and DevGroup; (X) Accounting/Constructive Trust against Reisdorf and DevGroup; and (XI) Breach of Contract against Reisdorf.  (Doc. No. 9 ¶¶ 96-158.)

On October 3, 2014, i3 and LI filed a motion to dismiss Counts III and IX of the Amended Complaint.  (Doc. No. 24.)  On November 14, 2014, Reisdorf and DevGroup voluntarily dismissed Counts IX, XIII, and XIV of their Amended Complaint.  (Doc. No. 41.)  On March 6, 2015, the Court dismissed Counts IX, XIII, and XIV of the Amended Complaint without prejudice.  (Doc. No. 48.)  On April 21, 2015, the Court dismissed Count III of the Amended Complaint with prejudice.  (Doc. No. 93.)

Ogle now moves for summary judgment as to all claims asserted against him (Counts V, VI, VII, and XV).  (Doc. No. 51.)  i3 and LI move for summary judgment on Counts I-VI, VIII, and X-XII of the Amended Complaint (Doc. No. 59), and for partial summary judgment on Counts II and III of their counterclaims against Reisdorf (Doc.

No. 62).  Reisdorf and DevGroup move for partial summary judgment on Counts I, II, III, IV, VII, VIII, IX, X, and XI[1] of i3 and LI's counterclaims.  (Doc. No. 85.)

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly

---

[1]      Although Reisdorf and DevGroup include Count XI of i3 and LI's counterclaims in their motion for partial summary judgment, the title of their motion does not include Count XI (*see* Doc. No. 85 at 1), and Reisdorf and DevGroup do not address Count XI in their briefing (*see* Doc. Nos. 94 & 106).  As such, and as i3 and LI assert in their opposition brief, it appears that Reisdorf and DevGroup have dropped their motion as to Count XI (*see* Doc. No. 95 at 28 n.3).  Accordingly, the Court presumes that Reisdorf and DevGroup do not move for summary judgment on Count XI and, accordingly, need not address Reisdorf and DevGroup's motion as to Count XI.

supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Ogle's Motion for Summary Judgment

### A.   Promissory Estoppel (Count V)

Ogle moves for summary judgment on Count V of the Amended Complaint, in which Reisdorf claims that Ogle made an enforceable promise under the doctrine of promissory estoppel. (*See* Doc. No. 53 at 8-14.) Under Minnesota law, "[p]romissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). "To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011); *see also Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995) (citing *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992)).

Ogle argues that he is entitled to summary judgment on Reisdorf's promissory estoppel claim because Reisdorf has failed to show that he is entitled to equitable relief. (*See* Doc. No. 53 at 8-11.) First, Ogle asserts that neither of the two alleged promises made by Ogle to Reisdorf—that the Hasses were aware that DevGroup would be formed and conducted as a for-profit entity and that Reisdorf would be entitled to certain salary and other benefits and would not be terminated if he apologized to the Hasses—can form

the basis for a promissory estoppel claim due to the existence of Reisdorf's employment contract, which precludes his promissory estoppel claim.  (*Id.* at 9.)  Second, Ogle contends that even if the alleged promises could form the basis for Reisdorf's promissory estoppel claim, "Reisdorf's claims are still barred because he did not rely on them to his detriment, and any alleged reliance was not reasonable."  (*Id.*)  Therefore, Ogle argues that he is entitled to summary judgment on Count V.

Reisdorf, on the other hand, argues that the Court should deny Ogle's motion because the Employment Agreement is not a legally enforceable contract[2] and because Reisdorf relied to his detriment on Ogle's alleged oral promises.  (*See* Doc. No. 94 at 9-10.)  First, Reisdorf argues that "[b]ecause the Employment Agreement is not supported by independent consideration, it may not be enforced against Reisdorf" and, accordingly, "Plaintiff is free to introduce evidence of the oral promises made by Ogle and the fact that he reasonably relied on those representations in leaving his employment, starting new employment with i3 and continuing to work for i3."  (*Id.* at 11-12.)  Second, Reisdorf argues that "what cannot be disputed is that Reisdorf left his previous employment and commenced working for i3 based on the promises Ogle made to him . . .

---

[2]      Although not expressly acknowledged in his brief, Reisdorf appears to plead his promissory estoppel and his breach of contract claims in the alternative.  Ogle addresses in his brief what he perceives to be an inherent contradiction in Reisdorf's alternative pleading, noting, "[h]ow Reisdorf can plead the existence of a contract, state its term of years, and claim damages based on its breach, and then argue no contract exists or that this contract is unenforceable when opposing Ogle's summary judgment motion is difficult to comprehend."  (Doc. No. 105 at 2 n.1.)  However, at this stage of the proceeding, the Court finds that Reisdorf may plead alternative theories of recovery, and as such, does not construe Reisdorf's promissory estoppel claim as precluding his breach of contract claim.

regarding [his] salar[y], ownership of i3 and other benefits." (*Id.* at 9-10.)  Finally,

Reisdorf points to his testimony that when Ogle made these oral promises to him,

Reisdorf "assumed . . . [the promises] w[ere] already approved [by the Hasses]," and

argues that such testimony, "coupled with the other facts of this case, certainly provide a

basis from which the fact finder could conclude that Reisdorf justifiably relied on the

representations of Ogle." (*Id.* at 13-14.)

The Court concludes that Ogle is entitled to summary judgment on Count V.  As

discussed below, the Court finds that Reisdorf's Employment Agreement constitutes a

legally enforceable contract and, accordingly, any alleged oral promises made by Ogle

about Reisdorf's salary and commission cannot support a promissory estoppel claim.  *See*

*Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413 (8th Cir. 1996) (providing that, in the

employment area, promissory estoppel is an "equitable remedy that may be used to

enforce a promise of employment where no express contract of employment exists")

(internal citations omitted); *Martens*, 616 N.W.2d at 746; *Banbury v. Omnitrition Int'l,*

*Inc.*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995).  Furthermore, even assuming that the

Employment Agreement is not a legally enforceable contract, and viewing the facts in the

light most favorable to Reisdorf, the Court finds that Reisdorf has failed to present

sufficient evidence to allow a reasonable juror to find that he has satisfied all three

elements of his promissory estoppel claim.  Specifically, the Court finds that, even if

Reisdorf could show a "clear and definite" promise was made by Ogle to Reisdorf,

Reisdorf cannot show both reasonable and detrimental reliance on Ogle's alleged

promises.  *See Hamann*, 808 N.W.2d at 834; *Ruud*, 526 N.W.2d at 372.  Finally, with

respect to the third element of his promissory estoppel claim, the Court finds that, under the totality of the circumstances, this situation does not require enforcement of the promise to prevent clear injustice. *See Cohen*, 479 N.W.2d at 391.

In sum, the Court concludes that Reisdorf's promissory estoppel claim fails as a matter of law because the Court finds that the existence of an enforceable contract precludes Reisdorf's promissory estoppel claim and that, even assuming that the Employment Agreement is unenforceable, Reisdorf is unable to prove all elements of his promissory estoppel claim. *See Anderson*, 477 U.S. at 256. Accordingly, the Court grants Ogle's motion for summary judgment on Count V.

### B. Slander (Count VI)

Ogle moves for summary judgment on Count VI of the Amended Complaint, in which Reisdorf asserts a claim of slander against Ogle. (*See* Doc. No. 53 at 14-21.) "In Minnesota, a plaintiff pursuing a defamation claim must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Weinberger v. Maplewood Rev.*, 668 N.W.2d 667, 673 (Minn. 2003); *see also Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). Defamation that affects a plaintiff in his business, trade, or profession is defamation per se and is actionable without proof of actual damages. *Stuempges*, 297 N.W.2d at 255.

Ogle argues that Reisdorf's slander claim fails as a matter of law because Reisdorf has failed to satisfy his burden of showing the requisite elements of his defamation claim. (*See* Doc. No. 53 at 14.) With respect to the first allegedly defamatory statement, Ogle

asserts that the "alleged statement by Ogle to Jim Peterson and other unidentified

employees of i3 or LI that Reisdorf was 'taking money' from the company" is "true, or at

least substantially accurate, and therefore is not defamatory." (*Id.* at 15-16.) Ogle argues

that "Reisdorf did, in fact, take monies out of the DevGroup coffers and pay them to

himself" and that "[e]ven if Reisdorf is arguing that the underlying gist of this statement

is somehow false—despite his own admission that he did take money—certainly from

Ogle's perspective, his statement reflected a supportable interpretation of an ambiguous

underlying situation." (*Id.* at 17.) In addition, Ogle argues that even if his alleged

statement about Reisdorf "taking money" was slanderous, "under the facts of this record,

Ogle is protected by a qualified privilege for employers to communicate to their

employees the reasons for another employee's discharge" because "there is absolutely no

evidence in the record" that the statement was "ever made to any person other than

Jim Peterson—a co-employee at i3." (*Id.* at 16.)

With respect to the second allegedly defamatory statement, Ogle asserts that the

"alleged statement by Ogle to Jim Peterson and Chris Kocopi about having to worry

about a 'crazy ex-Marine waiting in the bushes'. . . qualifies as mere opinion and

hyperbole; not capable of being verified as true or false." (*Id.* at 15-16.) In addition,

Ogle argues that "[t]he only potentially defamatory portion of that statement is the use of

the word 'crazy' or 'psycho'[]," and "[c]ritically, Reisdorf's only support for the fact that

this statement was made, and only source of information regarding the content of this

statement, comes from Peterson[], and Peterson *does not* remember whether the words

'psycho' or 'crazy' were even used." (*Id.* at 19.) Finally, Ogle argues that there is no

evidence to support Reisdorf's claims that his reputation was harmed, his character injured, or that he was subjected to ridicule, which Ogle asserts were "only of his own making." (*Id.* at 20.) Therefore, Ogle argues that he is entitled to summary judgment on Count VI. (*Id.* at 21.)

Reisdorf, on the other hand, argues that he has a valid claim for slander against Ogle. (*See* Doc. No. 94 at 15.) Reisdorf contends that "[h]ere, we have two defamatory statements that would constitute defamation per se[:] the 'crazy' or 'psycho ex-marine hiding in the bushes' uttered to his coworkers and 'that there had been a disagreement and misunderstanding concerning the financial operations of DevGroup and its profits' communicated to employees of John Ryan[.]" (*Id.*) First, with respect to the first alleged statement, Reisdorf argues that "clearly the 'ex-marine hiding in the bushes' is a false statement" that "is highly offensive when referring to a United States Marine veteran who had served in combat situations," and carries the "obvious implication[] that Reisdorf was emotionally unstable and capable of violence against his ex-coworker." (*Id.* at 17.) Second, as to the second alleged statement, Reisdorf argues that the "statements were false []as there were no disagreement or misunderstanding about DevGroup's finances or profits." (*Id.* at 18.)

The Court concludes that Ogle is entitled to summary judgment on Count VI. Viewing the evidence in the light most favorable to Reisdorf, and even assuming that Ogle indeed made such statements to his coworkers or to John Ryan, and that such statements were false, the Court finds that Reisdorf has failed to present sufficient evidence to allow a reasonable juror to find that the two allegedly defamatory statements

caused harm or otherwise affected Reisdorf's business, trade, or profession to satisfy the third element of his defamation claim or to constitute defamation per se. *See Weinberger*, 668 N.W.2d at 673; *Stuempges*, 297 N.W.2d at 255. Furthermore, the Court finds that, even assuming that Ogle made such statements and that the alleged statements were false, the statements were not published outside of a relatively confined circle of employees of i3 and LI, and because Reisdorf was employed by i3 and LI, Reisdorf cannot meet the second element of his defamation claim by showing that Ogle's statements were in fact "published" to third parties. Moreover, a reasonable juror could find that Ogle is entitled to a qualified privilege for the allegedly defamatory statements made between employees and employers. *See Ewald v. Wal-Mart Stores, Inc.*, 139 F.3d 619, 623 (8th Cir. 1998); *Harvet v. Unity Med. Ctr.*, 428 N.W.2d 574, 579 (Minn. Ct. App. 1988). In sum, having carefully reviewed the record before it, the Court finds that Reisdorf has failed to present sufficient evidence to allow a reasonable juror to find that Ogle made any defamatory statement. Therefore, the Court grants Ogle's motion for summary judgment on Count VI.

## C.     Fraud (Count VII)

Ogle moves for summary judgment on Count VII of the Amended Complaint, in which Reisdorf and DevGroup assert a claim of fraud against Ogle. (*See* Doc. No. 53 at 21-25.) To establish a claim for fraud under Minnesota law, a plaintiff must prove that: (1) the defendant made a false representation about a past or present material fact that was susceptible of knowledge; (2) the defendant knew the representation was false or asserted it as their own knowledge without knowing whether it was true or false; (3) the

defendant intended to induce the plaintiff to act, and the plaintiff was induced to act; and (4) the plaintiff acted in reliance on the representation and was damaged. *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *see also Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). Broken promises generally do not constitute fraud, unless the plaintiff shows "affirmative evidence" that the promisor had no intention to perform. *See Int'l Travel Arrangers v. Nw. Airlines, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993); *Hayes v. Northwood Panelboard Co.*, 415 N.W.2d 687, 690 (Minn. Ct. App. 1987). A plaintiff's failure to demonstrate a genuine issue of material fact on even a single element of fraud is sufficient for a court to grant summary judgment in defendant's favor. *See Valspar Refinish, Inc.*, 764 N.W.2d at 368-69.

Ogle argues that he is entitled to summary judgment on Reisdorf and DevGroup's fraud claim. (*See* Doc. No. 53 at 25.) First, Ogle asserts that the alleged statements made by Ogle to Reisdorf that "DevGroup would be created and operated as a for-profit business cannot be fraudulent since DevGroup was set up and operated as a for-profit business." (*Id.* at 22.) Specifically, Ogle contends that his alleged statement that the Hasses had approved of DevGroup being conducted as a for-profit business was "not fraudulent when it was made; the record demonstrates that the Hasses did give their approval to DevGroup's creation, and, at the time of formation, the ways in which DevGroup would make its money had not yet been determined." (*Id.*) Second, Ogle argues that "[e]ven if fraudulent statements were made, Reisdorf's reliance on said statements was unreasonable as a matter of law" because "Reisdorf is an intelligent and experienced businessman who had ample opportunity over the course of two years to

20

investigate any allegedly fraudulent statements made by Ogle." (*Id.* at 24-25.)

Therefore, Ogle argues that summary judgment is warranted on Reisdorf's fraud claim

against Ogle.

Reisdorf and DevGroup, on the other hand, argue that they have valid claims of

fraud against Ogle.  (*See* Doc. No. 94 at 25.)  Reisdorf and DevGroup assert that "Ogle

deceived both [Reisdorf] and the Midwest Minority Supplier Development Council

('MMSDC') by telling them that [Ogle] had obtained permission from the Hasses to form

an MBE and that [the] Hasses were aware of all the requirements for an MBE, including

that DevGroup would generate income for Reisdorf and Ogle." (*Id.*)  In addition,

Reisdorf and DevGroup contend that these statements were false because "Ogle admits

he knew that an MBE could not be a pass-through entity as far back as

February 2, 2011." (*Id.* at 26.)  Furthermore, Reisdorf and DevGroup contend that "the

record is devoid of any form of collaboration [with the Hasses]" to support Ogle's

representation that "the Hasses were in agreement with the MBE requirements and that

the MBE was totally legal." (*Id.* at 26-27.)  Moreover, Reisdorf and DevGroup argue that

"the actions of Reisdorf show that he did, in fact, rely on Ogle's representations in

forming DevGroup" and "so did the MMSDC and John Ryan, both of whom have vastly

more knowledge and experience than Reisdorf." (*Id.* at 27.)  Therefore, Reisdorf and

DevGroup argue that summary judgment on the fraud claim is unwarranted.

The Court concludes that Ogle is entitled to summary judgment on Count VII.

First, although Reisdorf and DevGroup contend that they were misled by Ogle, along

with MMSDC and John Ryan, the Court finds that Reisdorf and DevGroup have failed to

present sufficient evidence of fraud or misrepresentation committed by Ogle to allow a finding in their favor.  Second, the Court finds that, even if Reisdorf and DevGroup could show that fraudulent statements were made by Ogle, Reisdorf and DevGroup cannot show that they acted in reasonable reliance on those statements.  Because the evidence establishes that Reisdorf is an experienced businessman who had ample opportunity since the formation of DevGroup in February 2011 to investigate any allegedly fraudulent statements made by Ogle, but did not do so, the Court finds that Reisdorf cannot show that he acted in reasonable reliance on the allegedly fraudulent statements made by Ogle. *See M.H.*, 488 N.W.2d at 289; *see also Valspar Refinish, Inc.*, 764 N.W.2d at 369 (providing that "[r]eliance in fraud cases is generally evaluated in the context of the aggrieved party's intelligence, experience, and opportunity to investigate the facts at issue").  Therefore, because Reisdorf and DevGroup cannot establish a claim for fraud against Ogle, the Court concludes that Ogle is entitled to summary judgment on Count VII.

### D.    Breach of Fiduciary Duty (Count XV)

Ogle moves for summary judgment on Count XV of the Amended Complaint, which alleges that Ogle breached his fiduciary duties to Reisdorf and DevGroup as an officer, director, and owner of DevGroup.  (*See* Doc. No. 53 at 26-31.)  Corporate officers and directors owe fiduciary duties to their employers.  *Westgor v. Grimm*, 318 N.W.2d 56, 58 (Minn. 1982).  Fiduciary duty requires officers and directors "to act in good faith, with honesty in fact, with loyalty, in the best interests of the corporation." *Writers, Inc. v. West Bend Mut. Ins. Co.*, 465 N.W.2d 419, 423 (Minn. Ct. App. 1991).

To prove a claim for breach of fiduciary duty under Minnesota law, a plaintiff must show:  (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages.  *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010) (internal citations omitted).

Ogle argues that he is entitled to summary judgment on Count XV because "Ogle, as the minority shareholder of DevGroup, did not owe Reisdorf a fiduciary duty because Ogle did not have or exercise control of the corporation, did not have decision-making authority, and did not participate equally in the management of the corporation."  (Doc. No. 53 at 27.)  Ogle contends that "simply by virtue of his majority holding, Reisdorf had ultimate control of the corporation" and "all of the other traditional indicators of control, decision-making, and participation in the management of DevGroup were almost solely under Reisdorf's purview" because Reisdorf "was President, Treasurer, and Director of the Board of DevGroup."  (*Id.* at 27-28.)  Accordingly, Ogle argues that "Reisdorf was in control of DevGroup and needed no protection from Ogle, the minority shareholder." (*Id.* at 29.)  Furthermore, Ogle argues that, even assuming that Ogle owed a fiduciary duty to Reisdorf as a minority shareholder of DevGroup, "Reisdorf's claim for breach of fiduciary duty still fails as a matter of law because the statement/foundation for this claim stems from allegedly fraudulent misrepresentations made *before* DevGroup was formed," and thus "Ogle cannot have breached a fiduciary duty that had yet to come into existence via the creation of DevGroup."  (*Id.* at 29-30 (emphasis in original).)

Reisdorf and DevGroup, on the other hand, argue that Ogle breached his fiduciary duties to disclose material facts and to prevent Reisdorf and DevGroup from being misled

23

by his representations that "the Hasses were in agreement with the MBE requirements

and that the MBE was totally legal." (Doc. No. 94 at 27.) First, Reisdorf and DevGroup

argue that Ogle was a fiduciary because "DevGroup's Banking Resolutions gave Ogle

full access and full check signing authority" and "Ogle had plenty of control and, in any

event, he had the same or similar fiduciary duties as an Officer and as a Director of

DevGroup." (*Id.* at 29.) Second, Reisdorf and DevGroup argue that "the false

representations to MMSDC were made in Reisdorf's presence at the in-person MMSDC

meeting on May 23, 2011" and "DevGroup was officially formed on February 17, 2011."

(*Id.*) Reisdorf and DevGroup argue that "the fiduciary duty to tell Reisdorf and

DevGroup that [Ogle] had lied to the Hasses and/or that he had lied to Reisdorf continued

until[,] for the very first time, he revealed that he had lied all along in March 2013." (*Id.*)

In sum, Reisdorf and DevGroup argue that "Ogle had multiple obligations to disclose

material facts because he was a fiduciary, a person with special knowledge of

information, and to prevent Reisdorf and DevGroup from being misled by Ogle's earlier

statements." (*Id.*)

The Court concludes that Ogle is entitled to summary judgment on Count XV.

First, viewing the facts in the light most favorable to Reisdorf and DevGroup, the Court

finds that, even if Ogle made fraudulent statements regarding the status of DevGroup as a

for-profit entity and the Hasses' approval of DevGroup being a for-profit entity, those

statements were made prior to the formation of DevGroup, and accordingly, were made

prior to any alleged fiduciary duty on behalf of Ogle was created. In addition, even if the

Court were to find that Ogle owed a fiduciary duty to Reisdorf and DevGroup at the time

that he allegedly made the fraudulent statements, the Court finds that Ogle did not breach his fiduciary duty to Reisdorf and DevGroup because, as discussed above with respect to Count VII, the Court finds that Reisdorf and DevGroup have failed to produce sufficient evidence of fraud or misrepresentation committed by Ogle relating to the nature of DevGroup.  Furthermore, the Court finds that Reisdorf and DevGroup fail to cite any caselaw to support their argument that Ogle's alleged false statements to MMSDC and John Ryan constituted a breach of an alleged fiduciary duty to Reisdorf and DevGroup based on a statement to a third party.  Because the Court finds that Reisdorf and DevGroup have failed to present sufficient evidence to support their claim for breach of fiduciary duty and have failed to raise a genuine dispute of material fact with respect to their breach of fiduciary duty claim, the Court concludes that summary judgment is warranted with respect to Count XV.

## III.    i3 and LI's Motion for Summary Judgment

### A.    Wrongful Termination of Employment (Counts I, II, and III)

i3 and LI move for summary judgment on Counts I, II, and III of the Amended Complaint, in which Reisdorf asserts wrongful termination of employment claims against i3 and LI in violation of Title VII of the Civil Rights Act of 1964, the Minnesota Human Rights Act ("MHRA"), and Minn. Stat. § 181.932, respectively.  Because the Court has previously dismissed Count III with prejudice (*see* Doc. No. 93), the Court denies i3 and LI's motion with respect to Count III as moot.

With respect to Counts I and II, i3 and LI argue that they are entitled to summary judgment because Reisdorf cannot satisfy his burden of showing race/national origin

discrimination in violation of Title VII or the MHRA.  (Doc. No. 64 at 32-38.)  The analysis of discrimination under Title VII and the MHRA are the same.  *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 868 (8th Cir. 2008).  Courts analyze national origin and race discrimination claims based on disparate treatment under the *McDonnell Douglas* burden-shifting analysis where, as here, the plaintiff lacks direct evidence of discrimination.  *McDonnell Douglas*, 411 U.S. 792, 802 (1973); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011); *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010).

Under the *McDonnell Douglas* framework, Reisdorf must first make out a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802-03.  To establish a prima facie case of discrimination, Reisdorf must show that:  (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).  If Reisdorf establishes a prima facie case of discrimination, the burden shifts to i3 and LI to produce a legitimate, non-discriminatory reason for the adverse employment action.  *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006).  If i3 and LI are able to articulate such a reason, the burden then shifts back to Reisdorf to show that the proffered reason is merely a pretext for discrimination.  *Id.*

Reisdorf does not address all of the elements of his prima facie case of race/national origin discrimination in his summary judgment briefs.  (*See* Doc. Nos. 57, 94, 107.)  Instead, Reisdorf focuses on the third element, asserting that he was treated

differently than similarly situated individuals on the basis of race/national origin, and

thus giving rise to an inference of discrimination.  (*See* Doc. No. 94 at 18-22.)  Reisdorf

asserts that "a fact finder could reasonably conclude that Reisdorf was intentionally

discriminated against because of his race" based on "the inequitable treatment between

Reisdorf and Ogle."  (*Id.* at 22.)  Specifically, Reisdorf asserts that "the comparable

employee . . . is Ogle," and "Ogle's conduct was more egregious than Reisdorf," and yet

Reisdorf was terminated from employment and Ogle was not.  (*Id.* at 19.)

i3 and LI argue that, even assuming Reisdorf has established a prima facie case of

discrimination, i3 and LI "have proffered sufficient evidence of legitimate

non-discriminatory reasons that led to their discharge decision."  (Doc. No. 64 at 32.)  i3

and LI assert that "Reisdorf acted on prohibited conflicts of interest, engaged in

self-dealing, indirectly diverted funds, acted dishonestly, and breached his duties."  (*Id.*)

In addition, i3 and LI contend that "Ogle is not a valid comparator to infer that

defendants' reasons were a pretext for discrimination for a number of reasons," including

the following:  (1) "the decision makers on behalf of i3 and [LI] made reasonable

judgments, based on their investigation and on their extended working experience with

Reisdorf, that Reisdorf had more relative fault for the DevGroup problems than Ogle";

(2) "Ogle was regarded as more important to the future, a circumstance which

distinguished him from Reisdorf"; (3) "Ogle sought out Tim Hasse and other

management team members, and apologized for his role in DevGroup, [but] Reisdorf did

not make a similar effort"; and (4) "Ogle not only apologized, he volunteered to repay

improperly diverted funds back to i3 [. . . while] Reisdorf made no comparable offer,

despite having every opportunity to do so." (*Id.* at 36-37.)  Thus, i3 and LI contend that "[i]n the end, Ogle's cooperation, the genuineness of his apology and candor, and his willingness to accept responsibility and repay funds, led the decision makers to treat him differently than Reisdorf." (*Id.* at 37.)

The Court concludes that i3 and LI are entitled to summary judgment on Counts I and II.  First, the Court finds that, even assuming that Reisdorf has established all four elements of his prima facie case, Reisdorf does not present sufficient evidence for a reasonable juror to find that i3 and LI's legitimate non-discriminatory reason for his termination—his fiduciary misconduct—was a pretext for unlawful discrimination. *See Guimaraes v. SuperValue, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012).  Even if Reisdorf could present a prima facie case of discrimination, he still must present sufficient evidence to meet his "ultimate burden of proof and persuasion" that i3 and LI unlawfully discriminated against him on the basis of race or national origin. *Id.* at 976.  Viewing the record as a whole, and viewing the facts in the light most favorable to Reisdorf, the Court finds that Reisdorf has not met this burden. *See id.*; *Torgerson*, 643 F.3d at 1046. Therefore, the Court concludes that summary judgment is warranted on Counts I and II.

**B.     Breach of Contract and Related Claims (Counts IV, V, XI, and XII)**

i3 and LI argue that they are entitled to summary judgment on Reisdorf and DevGroup's contract-related claims of breach of contract, promissory estoppel, tortious interference with contract, and loss of business opportunity. (*See* Doc. No. 64 at 22-32, 38-45.)  The Court addresses each argument in turn.

28

### 1.    Breach of Contract (Count IV)

With respect to DevGroup and Reisdorf's claim for breach of contract, they allege

that i3 and LI breached the oral employment agreement, written employment contract,

and written phantom interest membership agreement.  (*See* Doc. No. 94 at 15; *see also*

Am. Compl. ¶¶ 173-231.)  Under Minnesota law, the elements of a breach of contract

claim are:  (1) formation of a valid contract; (2) performance of conditions precedent by

the plaintiff; and (3) breach of the contract by the defendant.  *Lyon Fin. Servs., Inc. v. Ill.*

*Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).  A valid contract contains the

elements of "offer, acceptance, and bargained for consideration."  *Topchain v. JP*

*Morgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014).

Viewing the facts in the light most favorable to Reisdorf and DevGroup, the Court

finds that Reisdorf and DevGroup's breach of contract claim cannot survive summary

judgment.  First, contrary to Reisdorf and DevGroup's assertions, the Court concludes

that the Employment Agreement is not "saturated with coercion" and instead constitutes a

legally enforceable contract.  (*See* Doc. No. 94 at 11.)  Second, no binding contract

regarding continued employment or other employment topics was formed between the

parties based on Ogle's alleged oral promises because those verbal statements as to

Reisdorf's employment do not constitute a specific and definite offer to modify

Reisdorf's employment and, moreover, the statements are inadmissible under the parol

evidence rule.  *See Gen. Corp. v. Gen. Motors Corp.*, 184 F. Supp. 231, 238 (8th Cir.

1960).  Third, even accepting that Reisdorf and DevGroup's breach of contract claim is

based on the alleged existence of a binding unilateral contract, the claim also fails

because there is no written agreement or contract modification between the parties that would modify the written Employment Agreement, which contains a merger clause.  (*See* Employment Agreement ¶ 16.)  Finally, the Court finds that Reisdorf has failed to present sufficient evidence to allow a reasonable juror to find that i3 and LI breached either the Employment Agreement or the Phantom Interest Membership Agreement because Reisdorf was terminated for cause, and both the Employment and Phantom Membership Interest Agreement provide that any benefits thereunder are lost if there is a termination for "cause" under the Employment Agreement.  (*See* Employment Agreement; Phantom Interest Membership Agreement.)

In sum, the Court finds that Reisdorf has failed to show that i3 and LI breached either Ogle's alleged oral employment agreement, Employment Agreement, or Phantom Interest Membership Agreement.  Therefore, Reisdorf's breach of contract fails as a matter of law.  Accordingly, i3 and LI are entitled to summary judgment on Count IV.

### 2. Promissory Estoppel (Count V)

Reisdorf's claim under the doctrine of promissory estoppel is based on the same underlying facts as his claim under contract law.  Because promissory estoppel is a creature of equity that implies "a contract in law where none exists in fact," *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981), such a claim may not proceed where a legally enforceable contract was formed.  *Gorham v. Benson Optical*, 539 N.W.2d 798, 801-02 (Minn. Ct. App. 1995).

Here, i3 and LI assert that a valid contract existed, and thus contend that any promissory estoppel claim is precluded.  (*See* Doc. No. 64 at 28-32.)  The Court agrees

and finds that Reisdorf's promissory estoppel claim against i3 and LI fails for the same

reasons discussed above with respect to his claim against Ogle.  Furthermore, the Court

finds that even if Reisdorf and i3 and LI had not entered a valid contract regarding

benefits and salaries, but i3 and LI otherwise had promised to pay such benefits or

salaries, Reisdorf has failed to produce evidence to show that the alleged statements

create a definite promise on which a person of Reisdorf's experience could reasonably

rely.  Promissory estoppel does not provide a means to evade the fact that the claimant

failed to establish breach of the contract; rather, it provides an equitable basis for

recovery of a promised benefit where the requirements for the formation of an

enforceable contract cannot be met.  *See Martens*, 616 N.W.2d at 746.  Based on

Reisdorf's submissions and arguments, the Court concludes that Reisdorf cannot

establish the elements of a promissory estoppel claim.  *See Hamann*, 808 N.W.2d at 834;

*Ruud*, 526 N.W.2d at 372.  Therefore, the Court concludes that i3 and LI are entitled to

summary judgment on Count V.

### 3.      Interference with Contract (Count XI)

In Count XI, DevGroup alleges that i3 and LI interfered with DevGroup's contract

with John Ryan.  (Am. Compl. ¶¶ 312-15.)  However, in its brief in opposition to i3 and

LI's motion for summary judgment, DevGroup "agree[s] that here there is only

termination of the John Ryan contract, and Defendants are entitled to summary judgment

on Count 11 . . . of Plaintiffs' Amended Complaint."  (Doc. No. 94 at 22.)  Because

DevGroup concedes that i3 and LI are entitled to summary judgment on its interference

with contract claim, the Court concludes that summary judgment is warranted on Count XI.

### 4.   Loss of Business Opportunity (Count XII)

DevGroup's claim for loss of business opportunity mirrors the same claims as its tortious interference with contract.  (Am. Compl. ¶¶ 316-18.)  Under Minnesota law, to establish a claim for loss of business opportunity/interference with prospective economic advantage, DevGroup must prove the following five elements:  (1) "[t]he existence of a reasonable expectation of economic advantage"; (2) "Defendant's knowledge of that expectation of economic advantage"; (3) "[t]hat defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation"; (4) "[t]hat in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit"; and (5) "[t]hat plaintiff sustained damages."  *Gieseke ex rel. Diversified Water Diversion, Inc. v. ICDA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

Here, DevGroup asserts that Ogle "employed wrongful means" when he allegedly had conversations with John Ryan employees regarding DevGroup and Reisdorf that were "both false and defamatory, meant to imply financial impropriety on Reisdorf's part, all with the hopes of procuring John Ryan's business without DevGroup."  (Doc. No. 94 at 24.)  However, Ogle's alleged communications to John Ryan is not sufficient evidence to infer "wrongful means," defamation, or other independently unlawful acts. The only evidence DevGroup presents to support a finding of such an independently

unlawful act is Ogle's testimony regarding his statements to John Ryan, which did not

include any reference to Reisdorf's termination or any suggestion that Reisdorf acted

dishonestly or with "financial impropriety." (*See* Doc. No. 94 at 24 (internal citations

omitted).) Therefore, the Court concludes that DevGroup has failed to present evidence

to allow a reasonable juror to find in its favor on its loss of business opportunity claim.

Accordingly, the Court grants i3 and LI's motion for summary judgment on Count XII.

### C.      Slander (Count VI)

With respect to Reisdorf's claim of defamation against i3 and LI, Reisdorf relies

on the same underlying facts as his defamation claim against Ogle. (Doc. No. 94

at 15-18; Am. Compl. ¶¶ 259-64.) For the same reasons discussed above with respect to

Reisdorf's defamation claim against Ogle, the Court finds that Reisdorf has failed to

present sufficient evidence to allow a reasonable juror to find in Reisdorf's favor on his

defamation claim against i3 and LI. Accordingly, the Court grants i3 and LI's motion for

summary judgment on Count VI.

### D.      Violation of Minn. Stat. § 181.13, *et seq.* (Count VIII)

i3 and LI move for summary judgment on Count VIII of Reisdorf's Amended

Complaint, in which Reisdorf seeks unpaid bonus earnings under Minn. Stat. § 181.13,

et seq. (*See* Doc. No. 64 at 50-51.) Under Minn. Stat. § 181.13, "[w]hen an employer

employing labor within this state discharges an employee, the wages or commissions

actually earned and unpaid at the time of the discharge are immediately due and payable

upon the demand of the employee." Minn. Stat. § 181.13(a). Minn. Stat. § 181.13

further provides that "[a]n employee's demand for payment under this section must be in

writing." *Id.*  In construing Minn. Stat. § 181.13, the Minnesota Supreme Court has held that the statute "must be strictly construed" given that Minn. Stat. § 181.74 holds employers criminally liable for refusing to provide contracted-for benefits to employees under employment agreements.  *See Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 126 (Minn. 2007); *see also Chatfield v. Henderson*, 90 N.W.2d 227, 232 (1958) (noting that Minn. Stat. § 181.13 is a penal statute and must be strictly construed).  The Minnesota Supreme Court has also held that Minn. Stat. § 181.13 "is a timing statute, mandating not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee." *Lee*, 741 N.W.2d at 125.

i3 and LI argue that Reisdorf did not make a demand after his discharge, and therefore, did not comply with the statutory requirements.  (*See* Doc. No. 64 at 50.)  In addition, i3 and LI contend that "[e]ven if Reisdorf made a pre-suit demand, as there was 'cause' for his termination, he is not entitled to bonuses not yet paid."  (*Id.* at 51.)  Reisdorf does not directly address Count VIII or respond to i3 and LI's arguments in his opposition brief.  (*See* Doc. No. 94.)

The Court concludes that Reisdorf has failed to present any evidence to support his claim for allegedly withheld bonuses by i3 and LI in violation of Minn. Stat. § 181.13.  As i3 and LI correctly assert, to show a violation of Minn. Stat. § 181.13, Reisdorf must show that he submitted a written demand for his alleged unpaid bonuses.  *See* Minn. Stat. § 181.13.  Although Reisdorf alleges that he "verbally contacted Ogle on behalf of i3 and LI on[] December 2012, January, February, and March of 2013 to learn when he should expect to receive his bonuses" (Am. Compl. ¶ 47), the statute specifies that such demands

must be in writing.  Viewing the evidence in the light most favorable to Reisdorf, and

strictly construing Minn. Stat. § 181.13, the Court finds Reisdorf has not satisfied his

responsibility to make a written demand for the i3 and LI bonuses.  Moreover, even if the

Court found that Reisdorf had satisfied his statutory requirement of submitting a demand

for payment in writing, and even if the Court broadly construed the statutory terms

"wages" or "commissions" to include bonuses, the Court concludes that Reisdorf's claim

for his alleged entitlement to bonuses is premised on i3 and LI's alleged breach of the

terms of the Employment Agreement and, as such, is properly brought under his breach

of contract claim rather than under Minn. Stat. § 181.13, "which is a timing statute

narrowly tailored to that purpose."  *Lee*, 741 N.W.2d at 129; *see also id.* at 123

(providing that liability under Minn. Stat. § 181.13 depends on an employee's contractual

entitlement to wages).  Accordingly, the Court grants i3 and LI's motion for summary

judgment with respect to Count VIII.

### E.      Declaratory Judgment (Count X)

In Count X of the Amended Complaint, Reisdorf and DevGroup seek a declaration

that the non-competition agreements are unenforceable.  (Am. Compl. ¶¶ 299-311.)

Under Minnesota law, courts uphold non-compete agreements that are "for the protection

of the legitimate interest of the party in whose favor [they are] imposed, reasonable as

between the parties, and not injurious to the public.  *Fam. Fitness of Royal, LLC*, Civ.

No. 09-3503, 2010 WL 145259, at *3 (D. Minn. Jan. 8, 2012) (citing *Bennett v. Storz*

*Broad. Co.*, 134 N.W.2d 892, 898 (Minn. 1965); *Adcom Express, Inc. v. EPK,*

*Inc.*, No. C6-95-2128, 1996 WL 266412 at *4 (Minn. Ct. App. May 21, 1996).  To

determine the reasonableness of a non-compete agreement, the Court considers:

(1) whether the restraint is necessary for the protection of the business or goodwill of the employer; (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests; (3) how long the restriction lasts; and (4) the geographic scope of the restriction. *Prow v. Medtronic, Inc.*, 770 F.2d 117, 120 (8th Cir. 1985).

Reisdorf and DevGroup assert that the non-compete provisions of the Employment Agreement and Phantom Interest Membership Agreement are "unenforceable for lack of separate consideration, and . . . on the bases that the provisions are excessively broad as to geographic scope, duration, activity and otherwise." (Am. Compl. ¶ 301.) Specifically, Reisdorf and DevGroup assert that: (1) the clauses are "vague in that they fail to define certain essential terms such as 'services,' and 'competitor of i3'"; (2) "[b]y failing to identify a geographic region, the non-compete and non-solicitation clauses might be interpreted as applying to the world, the United States, the Midwest, Minnesota, the twin-city metropolitan area, Scott County or the city of Shakopee, Minnesota"; and (3) "[t]he term of two[] years set forth in the non-compete and non-solicitation clauses is excessive." (*Id.* ¶¶ 303, 306). Alternatively, Reisdorf and DevGroup seek a declaration that "the defendants should be required to pay Reisdorf a minimum of two (2) years of base compensation plus two years of incentive compensation in addition to the severance pay set forth in Article 4(d) of the Employment Agreement in addition to reinstating his 20% phantom interest membership in i3." (*Id.* ¶ 309.)

i3 and LI argue that they are entitled to summary judgment on Count X because the noncompetition agreements are enforceable. (*See* Doc. No. 64 at 45.) i3 and LI

assert that "Reisdorf signed employment and phantom membership interest agreements with noncompetition provisions four months after he began work at i3," contend that "[Reisdorf] knew exactly what the language would be ten days before he began employment at i3," and "[Reisdorf] negotiated, in exchange for the noncompete obligation, a severance provision." (*Id.* at 44.) Furthermore, i3 and LI contend that "the noncompetition provisions here were ancillary to the original employment agreement and no independent consideration was necessary." (*Id.*) Moreover, i3 and LI argue that "if independent consideration was required, there was a negotiated quid pro quo for the noncompetition provision where Reisdorf requested and i3 agreed to a severance provision." (*Id.*) Thus, i3 and LI argue that "[t]here was ample consideration here, and the two-year noncompetition provision, especially given the acquisition of a contingent ownership interest in i3, is reasonable." (*Id.*)

The Court concludes that the covenant not to compete is unreasonable and unenforceable. *See Anytime Fitness*, Civ. No. 08-4905, 2008 WL 5191853, at *4; *see also* Employment Agreement ¶ 8; Phantom Membership Interest Agreement ¶ 6.A. In this case, the Court agrees with i3 and LI that the agreements protect i3 and LI's legitimate interests and, at least preliminarily, that the non-compete is reasonable in its length of time. *See, e.g.*, *Timm & Assocs., Inc. v. Broad*, Civ. No. 05-2370, 2006 WL 3759753, at *4 (D. Minn. Dec. 21, 2006) (finding two-year restriction reasonable). However, while the Court understands that many, if not most, non-compete provisions are intended to cover a situation where a former employee begins working for a direct competitor in the same geographic area, the actual language of the non-compete clauses

at issue here appears to be more broadly drawn, so as to prohibit the provision or offer of any services in any nature to a competitor of i3, without any geographic restriction.  In the Court's view, the parameters of the non-compete clauses are unreasonable, and therefore, the Court concludes that the provisions in the agreements are unenforceable.  Accordingly, the Court declines to grant i3 and LI's motion for summary judgment on Count X.

## IV.   i3 and LI's Motion for Partial Summary Judgment on Counterclaims

i3 and LI move for summary judgment on Counts II and III of their counterclaims, in which they allege that Reisdorf and DevGroup breached their fiduciary duty and duty of loyalty to i3 and LI.  (*See* Doc. No. 101 at 13-16.)  Corporate officers and directors owe fiduciary duties to their employers.  *Westgor v. Grimm*, 318 N.W.2d 56, 58 (Minn. 1982).  The fiduciary duty requires officers and directors "to act in good faith, with honesty in fact, with loyalty, in the best interests of the corporation."  *Writers, Inc. v. West Bend Mut. Ins. Co.*, 465 N.W.2d 419, 423 (Minn. Ct. App. 1991).  To prove a claim for breach of fiduciary duty under Minnesota law, a plaintiff must show:  (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages.  *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010) (citing *Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989)).

i3 and LI argue that they are entitled to summary judgment on Counts II and III of their counterclaims because "Reisdorf was a fiduciary for i3 and [LI], and breached his duties of loyalty, care, good faith and disclosure as an agent, employee, and officer/manager."  (Doc. No. 101 at 13.)  First, i3 and LI contend that "Reisdorf was an

agent for i3 and [LI] and, therefore, a fiduciary" and that "Reisdorf was also a fiduciary under Chapter 322B, which governs limited liability companies." (*Id.*)  Second, i3 and LI argue that, as a fiduciary, Reisdorf "secretly profited from transactions with his principals where the details of transactions went undisclosed and were unfair to i3 and [LI]." (*Id.*) Specifically, i3 and LI assert that "Reisdorf tries to deflect all responsibility for his receipt of hundreds of thousands of dollars in secret profits from transactions with his employer" and that, in fact, "Reisdorf was an indispensable and central participant in all of DevGroup's activities, as well in i3's and [LI]'s pricing decisions." (*Id.* at 14.)  i3 and LI further assert that "[e]ven under Reisdorf's description of the history here, he jointly participated and acquiesced in what occurred, and failed to disclose material information." (*Id.*)

Reisdorf and DevGroup oppose i3 and LI's motion on the grounds that material disputes of fact remain to preclude summary judgment. (*See* Doc. No. 57 at 19.)  First, although Reisdorf and DevGroup concede that Reisdorf had fiduciary duties that applied to his relationship with DevGroup, Reisdorf and DevGroup contend that "Reisdorf's role with respect to either i3 and LI remains unclear and, therefore, what fiduciary duties apply[] also remains unclear." (Doc. No. 94 at 30.)  Specifically, Reisdorf and DevGroup assert that "it is suspected that [each LLC's organizational documents] would show . . . that Reisdorf was not a manager," which "would seem to end that inquiry and summary judgment would be denied." (*Id.* at 31.)  Second, Reisdorf and DevGroup contend that "[e]ven if this Court were to go ahead and analyze Reisdorf's fiduciary duties and conduct under a 'manager' or 'officer' standard, the record here clearly would preclude

summary judgment because the facts, particularly with respect to any claimed breach of fiduciary duties, are significantly in dispute." (*Id.* at 32.)  Finally, Reisdorf and DevGroup argue that "the only attempt to prove damages, and the amount thereof through the deadline for factual discovery is Defendants i3's and LI's claim that their damages are DevGroup's profits." (Doc. No. 57 at 24.)  As such, Reisdorf and DevGroup contend that "[w]ithout the requisite proof that such business would have gone to Defendants irrespective of contracting for it through an MBE . . . Defendants' claims for damages are wholly speculative and contraindicated by the record." (*Id.*)

The Court concludes that summary judgment is not warranted on Counts II and III of i3 and LI's counterclaims.  Viewing the evidence in the light most favorable to Reisdorf and DevGroup, the Court finds that Reisdorf and DevGroup have raised a genuine issue of fact to preclude summary judgment.  Specifically, the Court finds that Reisdorf and DevGroup have identified certain factual issues, such as the relationship between Reisdorf and i3 and LI, as well as the damages claimed by i3 and LI, to allow the claims to be brought before a jury.  Therefore, the Court finds that Reisdorf and DevGroup have sufficiently established a material dispute of fact to preclude summary judgment on Counts II and III of i3 and LI's counterclaims.  Accordingly, the Court denies i3 and LI's motion as to Counts II and III of their counterclaims.

## V.      Reisdorf and DevGroup's Motion for Partial Summary Judgment

### A.      Count I (Fraud and Misrepresentation)

Reisdorf and DevGroup argue that Count I of i3 and LI's counterclaims "should be dismissed because Defendants i3 and LI cannot make the requisite proof that they

have been damage[d], nor the amount thereof." (Doc. No. 57 at 24.) To establish a claim for fraud under Minnesota law, a plaintiff must prove that: (1) the defendant made a false representation about a past or present material fact that was susceptible of knowledge; (2) the defendant knew the representation was false or asserted it as their own knowledge without knowing whether it was true or false; (3) the defendant intended to induce the plaintiff to act, and the plaintiff was induced to act; and (4) the plaintiff acted in reliance on the representation and was damaged. *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *see also Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). Where a plaintiff seeks to assert a claim for fraud by omission, as here, the plaintiff must show that the defendant stood in a confidential or fiduciary relation to the other party and failed to disclose material facts. *See Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972).

Reisdorf and DevGroup argue that Reisdorf is entitled to summary judgment on Count I of i3 and LI's counterclaims. (*See* Doc. No. 106 at 8.) First, Reisdorf and DevGroup assert that i3 and LI cannot show detrimental reliance because "Hasse did not rely on Ogle's representations, or lack of representations by Reisdorf." (Doc. No. 57 at 20.) Second, Reisdorf and DevGroup contend that, without such detrimental reliance, "there could be no 'pecuniary damage as a result of such reliance.'" (*Id.* at 21.) Furthermore, Reisdorf and DevGroup argue that "even if i3 and LI could show detrimental reliance, they can neither show damages resulting therefrom nor the amount thereof." (*Id.*)

i3 and LI, on the other hand, argue that "[n]one of these arguments have any

merit" and that summary judgment should be denied on Count I.  (*See* Doc. No. 95 at 24.)

First, i3 and LI argue that Count I "mirrors in many respects the fiduciary duty claims in

Counts Two and Three" and that "Plaintiffs miss the point" on the reliance argument.

(*Id.*)  i3 and LI contend that "[t]he many failures to disclose recited in the counterclaim

are once again ignored by plaintiffs."  (*Id.*)  i3 and LI further contend that "[t]he failure to

disclose material information plainly lulled i3 owners and managers to believe nothing

was occurring where Reisdorf and Ogle were acting adversely to i3 and [LI], and

prevented any meaningful evaluation of how to go forward given all the issues with a

minority business owned by its two principal managers."  (*Id.*)  In addition,  i3 and LI

contend that, with respect to Reisdorf and DevGroup's damages argument, "[i]t is hard to

comprehend how plaintiffs can in good faith suggest there is no proof of impermissible

profits or losses, whether characterized as damages or disgorgement of profits."  (*Id.*

at 25.)  Moreover, i3 and LI argue that "[t]here are obvious genuine issues of material

fact on the extent of any disgorgement of profits or damages," which should be reserved

for a jury to determine.  (*Id.* at 27.)

     The Court concludes that Reisdorf and DevGroup are entitled to summary

judgment on Count I of i3 and LI's counterclaims.  First, the Court observes that the

principal basis for i3 and LI's claim is that Reisdorf failed to disclose material

information relating to the nature of DevGroup's structure and business and, as a result of

that omission, he committed fraud on i3 and LI.  However, viewing the evidence in the

light most favorable to i3 and LI, the Court finds that i3 and LI have failed to present

sufficient evidence that Reisdorf's omissions amounted to fraud.  Specifically, the Court

finds that, even assuming that Reisdorf was in a fiduciary relationship with i3 and LI, i3 and LI have not presented sufficient evidence to allow a reasonable juror to find that Reisdorf knew or should have known that he possessed special knowledge of information relating to the details of the DevGroup, i3, and LI's transactions, or that i3 and LI's board and owners were misled by his and Ogle's statements.  Moreover, the Court finds that i3 and LI have failed to present sufficient evidence of causation and damages to allow a reasonable juror to find in their favor on Count I.  *See Marion v. Miller*, 55 N.W.2d 52, 55 (Minn. 1952); *Bryan v. Kissoon*, 767 N.W.2d 491, 497 (Minn. Ct. App. 2009). Accordingly, the Court grants Reisdorf and DevGroup's motion with respect to Count I of i3 and LI's counterclaims.

### B.      Breach of Fiduciary Duty (Count II) and Duty of Loyalty (Count III)

Reisdorf and DevGroup move for summary judgment on Counts II and III of i3 and LI's counterclaims.  (*See* Doc. No. 85 at 2.)  However, in their brief in opposition to i3 and LI's motion for summary judgment on Counts II and II of i3 and LI's counterclaims, Reisdorf and DevGroup assert that "summary judgment on i3 and LI's breach of fiduciary duties counterclaim is not appropriate."  (Doc. No. 94 at 30.)

For the same reasons set forth above with respect to i3 and LI's motion for summary judgment on Counts II and II of their counterclaims, the Court denies Reisdorf and DevGroup's motion with respect to those counterclaims based on the existence of a material dispute of fact.

### C.      Unjust Enrichment (Count IV)

Reisdorf and DevGroup argue that Count IV of i3 and LI's counterclaims, which

asserts an unjust enrichment claim against Reisdorf and DevGroup "should be dismissed because Defendants i3 and LI cannot make the requisite proof that they have been damage[d], nor the amount thereof."  (Doc. No. 57 at 24.)

Under Minnesota law, unjust enrichment is an equitable remedy that plaintiffs may not pursue unless there is no adequate remedy at law.  *See Southtown Plumbing, Inc. v. Har-Ned Lumber Co. Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992); *see also Keough v. St. Paul Milk Co.*, 285 N.W. 809, 815 (1939).  Unjust enrichment ultimately requires i3 and LI to prove that they received something of value, which they were not entitled to, under circumstances that would make it unjust to permit its retention.  *See id.*  i3 and LI must show that Reisdorf and DevGroup were "unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully."  *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted).

i3 and LI argue that DevGroup and Reisdorf were unjustly enriched by their failure to pay i3 and LI for their profits on DevGroup's transactions with John Ryan for which i3 and LI performed work and incurred expenses.  (*See* Doc. No. 64 at 7-15.)  In support of their argument, i3 and LI point to DevGroup's invoices to John Ryan and testimony by employees of DevGroup, i3, and LI to suggest that Reisdorf and DevGroup manipulated pricing decisions for John Ryan projects to generate profits to DevGroup and Reisdorf.  (*See id.*)  i3 and LI further contend that "Reisdorf caused i3 or [LI] to go unpaid for services they performed [and] reduced pricing so DevGroup could profit."  (*Id.* at 37.)  As such, i3 and LI assert that Reisdorf and DevGroup have been unjustly enriched by their actions and, as a result of their alleged unjust enrichment, i3 and LI

have been damaged in excess of $75,000.  (Am. Compl. ¶¶ 129-31.)  i3 and LI further

assert that they are entitled to an accounting and constructive trust on the profits and

assets diverted by Reisdorf and DevGroup by virtue of their alleged fraudulent conduct.

(*Id.* ¶¶ 152-53.)

Reisdorf and DevGroup argue that i3 and LI's motion with respect to Count IV of

i3 and LI's counterclaims must be denied under the doctrine of "unclean hands."  (*See*

Doc. No. 57 at 15.)  Reisdorf and DevGroup argue that "the evidence is undisputed that

Defendants i3 and LI, acting through Ogle and with Tim Hasse's consent, intended to

have DevGroup operate as a pass-through entity, a sham" and that the "result would have

been a clear act of defrauding John Ryan Performance and its[] customer, Bank of

America, of their specifically sought-after minority spend."  (*Id.* at 17.)  Reisdorf and

DevGroup further argue that "the result of Defendants' counterclaims would be to

effectuate that fraud on John Ryan Performance and Bank of America after the fact."

(*Id.*)  Therefore, DevGroup and Reisdorf request summary judgment on Count IV.

The Court concludes that Reisdorf and DevGroup are not entitled to summary

judgment on Count IV of i3 and LI's counterclaims.  Here, the Court finds that i3 and LI

have presented sufficient evidence that i3 or LI incurred expenses while performing work

for John Ryan and that DevGroup failed to reimburse i3 and LI for such work-related

expenses to survive summary judgment.  For example, the record contains evidence of

specific instances in which DevGroup invoiced John Ryan for a particular service or

expense that was performed or incurred by i3, but for which i3 was unpaid.  (*See, e.g.*,

Doc. No. 102 ("Fronk Supp. Aff.") ¶ 15, Attach. 6 ("July 20, 2012 Invoices").)  As such,

the Court finds that i3 and LI have presented sufficient evidence that Reisdorf or DevGroup may have been unjustly enriched to preclude summary judgment on i3 and LI's unjust enrichment claim.  Accordingly, the Court denies Reisdorf and DevGroup's motion for summary judgment on Count IV of i3 and LI's counterclaims.

### D.   Conversion (Count VII) and Civil Theft (Count IX)

Reisdorf and DevGroup argue that they are entitled to summary judgment on Counts VII and IX of i3 and LI's counterclaims, which assert that Reisdorf and DevGroup engaged in unlawful conversion and engaged in civil theft in violation of Minn. Stat. § 604.14, respectively.  (*See* Doc. No. 57 at 24.)

Under Minnesota law, conversion is defined as "an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property." *Bloom v. Henn. Cnty.*, 783 F. Supp. 418, 440 (D. Minn. 1992) (quoting *Dain Bosworth, Inc. v. Goetze*, 374 N.W.2d 467, 471 (Minn. Ct. App. 1985)).  A plaintiff who prevails on a claim of conversion may seek punitive damages that are in addition to the value of converted property under Minn. Stat. § 604.14, which provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater."  Minn. Stat. § 604.14, subd. 1.

The Court concludes that Reisdorf and DevGroup are entitled to summary judgment on Counts VII and IX of i3 and LI's counterclaims.  Viewing the evidence in the light most favorable to i3 and LI, the Court finds that i3 and LI have failed to produce

sufficient evidence to establish their prima facie case of conversion.  Specifically, the

Court finds that i3 and LI cannot present sufficient evidence of willful conduct on behalf

of Reisdorf or DevGroup to show conversion.  *See Bloom*, 783 F. Supp. at 440.

Therefore, the Court concludes that Reisdorf and DevGroup are entitled to summary

judgment on i3 and LI's conversion and civil theft counterclaims.  Accordingly, the Court

grants summary judgment as to Counts VII and IX of i3 and LI's counterclaims.

### E.      Interference with Contract (Count VIII)

Reisdorf and DevGroup argue that they are entitled to summary judgment on

Count VIII of i3 and LI's counterclaims, which asserts that DevGroup improperly

interfered with i3 and LI's business relationships and contracts.  (*See* Doc. No. 57.)  In

order to prevail on a tortious interference with contract claim, a plaintiff must

demonstrate the existence of a contract, the alleged wrongdoer's knowledge of the

contract, and an intentional procurement of its breach, without justification, that results in

damage to the plaintiff.  *See Maness v. Star-Kist Foods, Inc.*, 7 F.3d 704, 709 (8th

Cir. 1993) (citing *Furlev Sales and Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325

N.W.2d 20, 25 (Minn. 1982)); *see also Royal Realty Co. v. Levin*, 69 N.W.2d 667, 671

(Minn. 1995).

Reisdorf and DevGroup argue that Count VIII "should be precluded by the

equitable maxim of unclean hands."  (Doc. No. 57 at 24.)  Specifically, Reisdorf and

DevGroup contend that "the evidence is undisputed that Defendants i3 and LI, acting

through Ogle and with Tim Hasse's consent, intended to have DevGroup operate as a

pass-through entity, a sham" and that the "result would have been a clear act of

defrauding John Ryan Performance and its[] customer, Bank of America, of their specifically sought-after minority spend." (*Id.* at 17.)  In addition, Reisdorf and DevGroup argue that "[w]hat Ogle admittedly knew and what Hasse implicitly knew was that by DevGroup passing through all income from John Ryan business, the MBE would be a sham, certainly with respect to John Ryan business." (*Id.*)  Moreover, Reisdorf and DevGroup contend that "Reisdorf operated DevGroup legitimately, thereby preventing the perpetration of a fraud, is of no moment, because Minnesota law does not require that a party be defrauded or harmed to invoke the doctrine of unclean hands." (*Id.* at 5.)  Therefore, Reisdorf and DevGroup argue that summary judgment is warranted on Count VIII of i3 and LI's counterclaims.

i3 and LI assert that DevGroup's acts and omissions interfered with i3 and LI's business contracts with John Ryan and that such omissions by DevGroup were intentional.  (Am. Compl. ¶¶ 143-47.)  i3 and LI further assert that "[n]o justification exists for defendant DevGroup's acts or omissions, as competition between DevGroup and i3 or [LI] was not permitted, given Reisdorf's fiduciary duties and duty of loyalty owed to i3." (*Id.* ¶ 146.)  In addition, i3 and LI assert that they have sustained losses in excess of $500,000 as a direct result of DevGroup's interference with the John Ryan contract.  (*Id.* ¶ 147.)

The Court concludes that DevGroup is entitled to summary judgment on Count VIII of i3 and LI's counterclaims.  Although, as previously discussed, the Court finds that genuine issues of material fact exist regarding i3 and LI's breach of fiduciary duty claims against Reisdorf and DevGroup, the Court finds that no genuine issue of

material fact exists with regard to i3 and LI's client contract claim.  The Court concludes

that i3 and LI have failed to satisfy the required elements to prove an intentional

inference with contract claim.  Specifically, the Court finds that i3 and LI have not

presented evidence that any of their existing contracts or relationships with John Ryan

were breached as a result of DevGroup's conduct.  Moreover, as i3 and LI acknowledge,

"[w]ithout a breach by John Ryan, there is no interference with contract claim."  (Doc.

No. 64 at 39.)  In sum, the Court concludes that i3 and LI have failed to make a sufficient

showing of interference with contract to survive summary judgment.  Accordingly, the

Court grants Reisdorf and DevGroup's motion for summary judgment as to Count VIII of

i3 and LI's counterclaims.

### F.      Accounting/Constructive Trust (Count X)

Reisdorf and DevGroup argue that Count X of i3 and LI's counterclaims, in which

i3 and LI assert an accounting/constructive trust claim against Reisdorf and DevGroup,

"should be dismissed because Defendants i3 and LI cannot make the requisite proof that

they have been damage[d], nor the amount thereof."  (Doc. No. 57 at 24.)

Under Minnesota law, accounting is an equitable remedy that plaintiffs may not

pursue unless there is no adequate remedy at law.  *See Southtown Plumbing, Inc. v.

Har-Ned Lumber Co. Inc*., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992); *see also Keough

v. St. Paul Milk Co.*, 285 N.W. 809, 815 (1939).  "The right of accounting is predicated

on the inability of the rightful owner of the money or property to determine how much, if

anything, is due."  *Robert W. Nicholson, Jr. Trust v. Sawmill Golf Club, Inc.*, A05-2283,

2006 WL 3593032 at *8 (Minn. Ct. App. Dec. 12, 2006).  In Minnesota, a court may

impose a constructive trust "only when there is clear and convincing evidence that a constructive trust is necessary to prevent unjust enrichment and whenever legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship." *Ramette v. Digital River, Inc.*, 306 B.R. 630, 636-37 (B.A.P. 8th Cir. 2004); *see also Spiess v. Schumm*, 448 N.W.2d 106, 108 (Minn. Ct. App. 1989).

The Court concludes that Reisdorf and DevGroup are entitled to summary judgment on Count X of i3 and LI's counterclaims. Viewing the evidence in the light most favorable to i3 and LI, the Court finds that i3 and LI have not shown that any particular form of accounting is required or that the disclosures and financial information disclosed during discovery was inadequate or otherwise deficient to support its monetary claims. In addition, as i3 and LI acknowledge, i3 and LI have produced all financial records of DevGroup, invoices, and other evidence related to DevGroup's finances (*see* Doc. No. 95 at 6), and while factual issues may remain as to the exact amount of profits arising from the transactions with John Ryan, the Court finds that i3 and LI have not presented sufficient evidence to survive summary judgment on its accounting claim. Furthermore, even assuming that Reisdorf and DevGroup were unjustly enriched, the Court finds that i3 and LI have not satisfied their burden of showing, by clear and convincing evidence, that the trust is necessary to avoid unjust enrichment in this case. *See Spiess*, 448 N.W.2d at 108. Therefore, the Court concludes that Reisdorf and DevGroup are entitled to summary judgment on i3 and LI's accounting and constructive

trust claim.  Accordingly, the Court grants Reisdorf and DevGroup's motion on Count X of i3 and LI's counterclaims.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The Motion for Summary Judgment brought by Chad Ogle (Doc. No. [51]) is **GRANTED** as follows:

   a.     Counts V, VI, VII, XV of the Amended Complaint (Doc. No. [12]), as brought against Chad Ogle, are **DISMISSED WITH PREJUDICE**.

   b.     Chad Ogle is dismissed as a defendant in this case, as there are no remaining claims pending against him.

2.     The Motion for Summary Judgment brought by i3, LLC and Logistics International, LLC (Doc. No. [59]) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a.     i3 and LI's Motion for Summary Judgment on Counts I, II, III, IV, V, VI, VIII, XI, and XII of DevGroup and Reisdorf's Amended Complaint (Doc. No. [12]) is **GRANTED.**

   b.     i3 and LI's Motion for Summary Judgment on Count X is **DENIED**.

  c. Counts I, II, III, IV, V, VI, VIII, XI, and XII of DevGroup and Reisdorf's Amended Complaint (Doc. No. [12]) are **DISMISSED WITH PREJUDICE**.

3. The Motion for Partial Summary Judgment by i3, LLC and Logistics International, LLC (Doc. No. [62]) is **DENIED**.

4. The Motion for Partial Summary Judgment by Dwight Reisdorf and DevGroup, Inc. (Doc. No. [85]) is **GRANTED IN PART AND DENIED IN PART** as follows:

  a. Reisdorf and DevGroup, Inc.'s Motion for Partial Summary Judgment on Counts I, VII, VIII, IX, and X of i3 and LI's Counterclaims (Doc. No. [9]) is **GRANTED.**

  b. Reisdorf and DevGroup, Inc.'s Motion for Partial Summary Judgment on Counts II, III, and IV is **DENIED**.

  c. Counts I, VII, VIII, IX and X of i3 and LI's counterclaims (Doc. No. [9]) are **DISMISSED WITH PREJUDICE**.

5. The Court strongly suggests that the parties make an attempt to resolve this case, with or without the assistance of United States Magistrate Judge Hildy Bowbeer, because a settlement might well serve the best interests of all parties.  If the Court can be of assistance in this matter, the parties should contact Brenda Schaffer, Calendar Clerk for the undersigned, at (651) 848-1296.

Dated:  September 11, 2015   s/Donovan W. Frank
          DONOVAN W. FRANK
          United States District Judge